## FEDERAL SUPPLY CO. v. WICHITA SALES & SUPPLY CO. (No. 1774.)

(Court of Civil Appeals of Texas. Amarillo. May 25, 1921. Rehearing Denied June 29, 1921.)

1. **Principal and agent** ☞103(13)—**Authority to sell does not give authority to barter.**

A general authority to sell given an agent does not give the authority to barter.

2. **Principal and agent** ☞103(13)—**Purchaser of truck could rely on representation of agent as to approval of authority to exchange.**

Purchaser of a motortruck was entitled to rely upon representation of salesman that his principal, whom he telephoned, had given its approval of an exchange, instead of a cash sale, and principal was estopped to deny that the salesman had authority to make the exchange, it being the custom to permit salesmen of motortrucks to make exchanges.

Appeal from District Court, Wichita County; J. W. Akin, Special Judge.

Suit by the Wichita Sales & Supply Company against the Federal Supply Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Fischer & Fischer, of Wichita Falls, for appellant.

F. S. Jones, of Houston, and John M. Martin, of Wichita Falls (Bonner, Bonner & Sanford, of Wichita Falls, on the brief), for appellee.

HUFF, C. J. The appellee, Wichita Sales & Supply Company, sued appellant, Federal Supply Company, for a certain traffic truck of the alleged value of $1,670, alleging in effect that one O. E. Lee had stolen the same from the plaintiff and sold it to the defendant. A writ of sequestration was sued out and levied on the truck, which defendant replevied. The defendant answered that it had purchased the truck from Lee, who was the duly appointed and authorized agent of plaintiff, to sell, and that defendant paid Lee $470 cash, and one Maxwell truck of the value of $1,200, for the traffic truck. It was pleaded also:

That Lee did not steal the truck, but it was in lawful possession as such agent, and authorized to take trucks into the surrounding country, demonstrate the same, and sell for cash, or to barter the same for used trucks and part cash. "That it had been and is the custom of plaintiff and other agencies selling trucks and automobiles by their agents traveling over the country demonstrating, selling, and exchanging the same in the manner stated above. That plaintiff knew that it was the custom and usage to dispose of their automobiles and trucks in this way, and, knowing this, intrusted the truck sued for herein to its agent, O. E. Lee, knowing the said Lee would sell or barter the same to innocent persons, who would have the right to believe that Lee had good authority to sell and deliver said trucks by reason of the custom and usage above mentioned." That plaintiff also armed Lee with sale orders, which it used, and with the same order used by their selling agency of that class of trucks. That by reason of the above plaintiff is estopped from denying the agency of Lee or apparent authority to barter and sell said truck.

The case is here without a statement of facts upon the finding of the trial court. The court finds:

"About September 1, 1919, plaintiff employed one O. E. Lee as their agent, to take trucks out into the country in the vicinity of Wichita Falls, Texas, and demonstrate said trucks, and take orders for the sale of same for cash or to exchange same for other property, but such exchange to be subject to the approval of the plaintiff. That it was the plaintiff's custom to have these agencies arrange for exchange of new trucks for used trucks and part cash, but these agencies were not authorized to consummate the transaction until some officer of the company had approved the same. That said Lee, as agent of plaintiff, left plaintiff's place of business at Wichita Falls, Texas, about September 4, 1919, with the truck sued for in his possession, and that plaintiff provided Lee with the customer's deposit receipt of the company, one of which receipts Lee used in consummating this deal."

The instrument referred to is in the nature of an order for and a receipt acknowledging the payment of $1,670, as payment in full for the truck. This was signed by Lee as salesman, and by appellant company. Appellant company's place of business was at Electra, about 26 miles from Wichita Falls. Lee represented himself as the agent of plaintiff, and exhibited the customer's deposit receipt. The appellant offered him $470 cash and a Maxwell truck, which was practically new, and reasonably worth $1,200, for the truck in question. Lee said he would phone his employer and let appellant know later. That on the 10th of September Lee returned and stated he had phoned his principal and was authorized to make the exchange. The exchange was then made upon the above terms. Lee turned over the truck and signed the order receipt, which the defendant, appellant here, understood to be a bill of sale to said truck. Lee absconded with the money and the Maxwell truck, and has not been heard of since. The court found that the receipt form given by Lee was used by the factory and all salesmen of the Traffic Motor Truck Corporation; that the defendant had no knowledge whatever of a fraud being perpetrated by Lee, the agent of plaintiff, and believed he had authority to make the exchange and receive the money.

Appellant's brief violates the rules of briefing. The assignments are grouped, one following the other, but we think these relate all to one subject; that is, that the judgment rendered is not supported by the facts found by the court, and that the court erred in his conclusions of law as applied to the facts found by the court. That he erred in not sustaining appellant's motion for a verdict (judgment). These matters all relate to the same subject, and may be considered together. The assignments are general, but when followed by appropriate propositions we believe sufficiently designate the grounds upon which the court erred in rendering the judgment. The statement under the proposition is not designated by a heading, and it is also followed by an argument and authorities without heading. If the judgment of the court is fundamentally wrong, we believe the brief would be sufficient to point it out. We have, therefore, concluded to consider the brief. Appellant presents the propositions: (1) That Lee had apparent authority to barter the truck for another truck and for cash; (2) that appellee, by giving possession of the truck, and providing him with the uniform contract order, is estopped from denying the authority of Lee.

[1, 2] A general authority to sell does not give the authority to barter, but in this case the court finds as a fact that Lee had the authority to exchange, but qualifies this with the finding that such exchange was to be

made upon approval of the principal. His finding is that appellant's knowledge of approval was obtained through the agent Lee, and that he afterwards notified appellant that appellees had approved the exchange. He·further finds it was the custom of the appellee to authorize the exchange for the used cars. Certainly, under these findings, Lee was acting within the apparent scope of his authority. While it is a general rule also that a purchaser cannot acquire a better title to the things sold than the seller had, yet, where an agent with authority to sell conveys the thing, he does not pass the title as in himself, but his principal's title. In this case it is found by the court the agent had the authority to sell upon the approval of the principal, and that its agents customarily exchanged trucks for secondhand cars. The appellant dealt in view of this authority and custom. The agent, it is true, perpetrated a fraud in pretending to have the approval of the appellee to the exchange, but this was not known by the appellant at the time of the exchange. It would seem, as far as was known to the appellant, the agent was acting within the apparent scope of his authority. He could make the exchange under his authority, and it was customary for appellees to permit agents in that character of agency to make such exchange.

The agent while in the apparent scope of his duty purported to have obtained the approval of his principal. 1 Mechem on Agency, § 716; 2 C. J., Agency, §§ 211–214; Case v. Jennings, 17 Tex. 674, 675; Hill v. Moore, 62 Tex. 610. It would seem where a principal has, by his voluntary act, placed an agent in such situation that a person of ordinary prudence, conversant with business usages, is justified in presuming the agent has authority to perform the particular act, and so deals with the agent, the principal is estopped as against the third person from denying the agent's authority. Bush Grocery Co. v. Conely, 61 Fla. 131, 55 South. 867. We think under the court's finding, estoppel should apply. It was pleaded, and the acts of the principal clothed the agent with authority to exchange the truck and furnish him with the customer's receipt, and, while acting within the apparent scope of his authority, phoned for approval and claimed to have it. This may have been untrue; but the court finds the appellant did not know of the fraud, and as a prudent man we see no reason why, under the circumstances, the appellant would not be entitled to rely upon the representations of the salesman in that particular. If it had been any other representation in the trade, it would have bound the principal. It seems to us it should bind appellee in this case, even though it was false; as appellee enabled the agent to occasion the loss by putting him in possession of the indices of authority to make the exchange and to represent it in the transaction, the loss ought to fall upon the appellee. 21 C. J. Estoppel, §§ 176, 177; Schleicher v. Armstrong, 32 S. W. 327. The case of Holmes v. Tyner, 179 S. W. 887, is distinguished from this case in many respects. There was no custom alleged or proved in that case. The facts in that case we did not think brought it within the rule of estoppel. The apparent authority only included the general power to sell, and not to barter. In that case the power to exchange was only at the home office of the company. Under the findings of fact we believe the court should have rendered judgment for appellant. ·

The judgment of the trial court will therefore be reversed and rendered.